IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

QUINCY WILLIAMS,

      Plaintiff,

v.                                      CASE NO. 5:13-cv-9-RS-GRJ

KENNETH TUCKER, et al.,

      Defendants.

_____/

## REPORT AND RECOMMENDATION

     This case is before the Court on Defendants' Motions to Dismiss, Docs. 94, 99.

Plaintiff, an inmate in the custody of the Florida Department of Corrections, who is

proceeding *pro se* in this 42 U.S.C. § 1983 case, has filed a response in opposition to

Defendant's motion, Doc. 109, and the motions are now ripe for review.  For the

reasons discussed below, Defendants' motions to dismiss are due to be granted with

respect to all claims except for the three claims identified in this report and

recommendation.

## I.  PLAINTIFF'S ALLEGATIONS

     According to Plaintiff, the correctional officers at Apalachee Correctional

Institution placed him in Administrative Confinement on August 12, 2012 for allegedly

violating Fla. Admin. Code Rule 33-103-(1-6) "Lewd and Lascivious Exhibition." (Doc.

28 at 5.)  The next day, Plaintiff cut his wrist with a razor and correctional officers used

chemical agents on him and took him to the shower for decontamination. *Id.*  He was

examined by a nurse and mental health physician and placed in a cell under self harm

observation status (SHOS). *Id.* Plaintiff received 7 stitches in his wrist as a result of the incident. *Id.* Plaintiff began refusing to eat or accept medication, and Defendant Dr. Knollinger, placed him in an inpatient crisis stabilization unit on August 14, 2012. (Doc. 28 at 5.)

After his placement in the crisis stabilization unit, Defendant Howell verbally harassed Plaintiff for refusing to eat, saying "you need to stop playing, a[i]n't nothing wrong with you." (Doc. 28 at 5-6.) Defendant Howell told Plaintiff to "stay off the door, I know what you are trying to do," which Plaintiff interprets as a reference to him masturbating. (Doc. 28 at 6.) Defendant Howell threatened Plaintiff that he would have another inmate hurt Plaintiff in exchange for half a pack of cigarettes. *Id.*

On August 15, 2012, Defendant Knollinger represented to Plaintiff that she had received a report that the Plaintiff was masturbating in view of the female staff in SHOS and was a management problem. *Id.* Plaintiff alleges that she told him that she would release him to security and hoped that "they gas...you real good." *Id.*

After this exchange, Defendant Harrell approached Plaintiff's cell and Plaintiff started pulling the stitches from his wrist, causing extensive bleeding. (Doc. 28 at 6.) Defendant Knollinger told Defendant Harrell that she did not "care about [his] wrist," Plaintiff had a masturbation problem, and Plaintiff had masturbated in front of her. *Id.* Defendant Harrell thereafter ordered Plaintiff into wrist restraints to take him to the nurse, who bandaged his wrist covering the two remaining stiches. (Doc. 28 at 6-7.)

Afterwards, Defendant Harrell escorted him to confinement, and Plaintiff informed him that he feared for his life due to Defendant Howard's threats. (Doc. 28 at

7.)  Defendant Harrell told Plaintiff that he would place Plaintiff on protective management, but that he would still be "gassed." *Id.*  Plaintiff was placed in a cell with a steel door used for inmates who have committed a lewd and lascivious act. *Id.* Plaintiff's cell had a mattress and no bed linen. *Id.*  Defendants Harrell and Barfield came by his cell and told him that he would be sprayed with chemical agents for masturbating while in SHOS. (Doc. 28 at 7.)  Defendant Harrell brought a camera to Plaintiff's cell and told him to stop causing a disturbance. Plaintiff contends that he was not causing a disturbance. *Id.*

Plaintiff alleges that his food flap was opened around 3:30 p.m. that day and he was sprayed with chemical agents. *Id.*  He was sprayed again about 15 to 30 minutes later. (Doc. 28 at 7-8.)  Plaintiff was escorted to a decontamination shower by Defendant Harrell, who threatened him with gassing if he did not stop crying. (Doc. 28 at 8.)  He was taken to a nurse for a post-use-of-force exam. *Id.* Plaintiff alleges that the nurse who examined him, Defendant Gunn, had a duty to refer him to a mental health nurse within 24 hours of any use-of-force. Plaintiff states that Nurse Gunn did not do so and he did not receive a mental health examination until three weeks later. *Id.*

Plaintiff received two disciplinary reports, one for for disobeying a verbal order and one for participating in a minor disturbance.  *Id.* The disciplinary report for the minor disturbance, written by Defendant Rickman, stated that Plaintiff was kicking the door and yelling profanity and that Plaintiff did not stop until chemical agents were used. *Id.* Plaintiff alleges that these statements are fabricated in an attempt to justify the use of force against him. *Id.*

Plaintiff participated in a disciplinary hearing, at which he asked the Hearing Team to review a wing camera and hand held camera.  (Doc. 28 at 8-9.)  The Hearing Team determined that the camera evidence did not support Plaintiff's statement. Plaintiff was sentenced to 60 days disciplinary confinement. (Doc. 28 at 9.)  According to Plaintiff, Defendants Barfield and Harrell threatened to keep Plaintiff in confinement and make his life miserable if he pursued this lawsuit. *Id.*

Plaintiff wrote a grievance to the Secretary of the Florida Department of Corrections ("FDOC") regarding Defendant Harrell's threats. (Doc. 28 at 9.)  The grievance was denied. Plaintiff appealed to the institutional level and to the Secretary of FDOC, which were also denied. *Id.*

As a result of these incidents during Plaintiff's time in confinement, he contends that he suffered high blood pressure, constant bad headaches, and paranoia, thinking that he would be gassed every time he saw a high ranking prison official come into the confinement wing. (Doc. 28 at 10.)

Plaintiff's numerous allegations, identify 13 distinct claims and purport to raise claims under the Eighth and Fourteenth Amendment of the Constitution and the Americans with Disabilities Act ("ADA").  Plaintiff's claims may be organized as follows:[1]

(1)     The Secretary of FDOC denied Plaintiff's grievance without addressing his complaints in violation of Plaintiff's due process rights.

(2)     Plaintiff received two disciplinary reports that contained falsified information, in violation of his due process rights.

---

[1] For ease of reference the Court will refer to the claims by these claim numbers in the report and recommendation.

(3)   The FDOC's policy for video-taping a disturbance is unconstitutional.

(4)   Defendants were deliberately indifferent towards Plaintiff's medical needs.
In particular, Plaintiff alleges:

   (a)   Defendants Knollinger and Howell conspired to have Plaintiff
moved from SHOS to Administrative Confinement, in deliberate
indifference to his need for medical treatment.

   (b)   Defendant Gunn improperly treated his wrist, exhibiting deliberate
indifference to his medical needs.

(5)   Defendants pepper sprayed Plaintiff in violation of the Eighth Amendment.
This claim has two subparts:

   (a)   Defendants pepper sprayed him without a penological justification,
in violation of the Eighth Amendment.

   (b)   Defendants Knollinger and Howell conspired to send Plaintiff to
Administrative Confinement so that he would be pepper sprayed.

(6)   Defendants Harrell and Rickman left Plaintiff in his cell, which was
partially contaminated with chemical agents, overnight, in violation of
Plaintiff's Eighth Amendment right to be free fro cruel and unusual
punishment.

(7)   Defendants Howell and Harrell threatened Plaintiff, in violation of
Plaintiff's Eighth Amendment rights.

(8)   Defendant Barfield failed to intervene when he observed Plaintiff being
pepper sprayed.

(9)     By permitting correctional officers to pepper spray inmates with high blood
        pressure the FDOC violates the Eighth Amendment.

(10)    Defendant Gunn violated Plaintiff's Eighth Amendment rights and the
        equal protection clause of the Constitution by failing to refer Plaintiff to
        mental health after the use-of-force incident.

(11)    Placing inmates who committed a "lewd and lascivious" act in a cell with a
        full steel door violates the Eighth Amendment and the equal protection
        clause of the Constitution.

(12)    Defendants Barfield and Culpepper failed to train their prison officials on
        the proper use of pepper spray.

(13)    The FDOC's use of pepper spray on a mentally disordered inmate violates
        the ADA.

## II. STANDARD OF REVIEW

### A. Exhaustion of Administrative Remedies

Under the Prison Litigation Reform Act (PLRA), inmates must exhaust all
available administrative remedies before proceeding in federal court.  42 U.S.C. §
1997e ("[N]o action shall be brought with respect to prison conditions under section
1983 of this title, or any other Federal law, by a prisoner...until such administrative
remedies as available are exhausted.").  The exhaustion provision is a mandatory
precondition to bringing suit in federal court. *Jones v. Bock,* 549 U.S. 199, 211 (2002).

For the exhaustion requirement to be met, the prisoner must "[properly]
exhaust all available remedies" prior to filing suit.  *Woodford v. Ngo*, 548 U.S. 81, 85

(2006). To properly exhaust all remedies, the prisoner must "take each step within the administrative process" and "file complaints and appeals in the place, and at the time, the prison's administrative rules require." *Johnson v. Meadows*, 418 F.3d 1152, 1158 (11th Cir. 2005) (quoting *Pozo v. McCaughtry*, 286 F.3d 1022, 1024-25 (7th Cir. 2002).

The Florida Administrative Code delineates procedures for inmates to file a grievance. The inmate must first file an informal grievance.[2] R. 33-103.005, Fla. Adm. Code. The recipient must either approve, deny, or return the grievance without action within 10 days, along with a statement of reasons supporting the decision.  R. 33-103.011(3)(a), Fla. Adm. Code. If the inmate is dissatisfied with the response, he may escalate the process by filing a formal grievance at the institutional level within 15 days of receiving the response. R. 33-103.006, Fla. Adm. Code.  If the inmate is then dissatisfied with the response to the formal grievance, he may file an administrative appeal to the Office of the Secretary within 15 days of the date of the response to the formal grievance.  R. 33-103.007, R. 33-103.011(1)(c), Fla. Adm. Code.

Additionally, when a defendant raises the issue of failure to exhaust in the context of an inmate's 42 U.S.C. § 1983 action, it is treated as a matter in abatement. *See Bryant v. Rich*, 530 F.3d 1368 (11th Cir. 2008). The Court uses a two part

---

[2]The grievance process must always be initiated by the filing of an informal grievance, unless the type of grievance is a grievance of reprisal, emergency grievance, grievance of disciplinary action, grievance involving inmate bank issues, medical grievance, grievance involving gain time, grievance challenging placement, grievance alleging violation of the Americans with Disabilities Act, grievances involving the return of incoming mail, and grievances alleging sexual abuse.  In those instances, the inmate may skip the informal grievance step and immediately file a formal grievance at the institutional level.  R. 33-103.006, Fla. Adm. Code.

procedure to determine whether a plaintiff has failed to exhaust.  First, the Court reviews the defendants' factual allegations along with those contained in the plaintiff's response, construing conflicting facts in the light most favorable to the plaintiff.  If, after reviewing these facts, the defendant is entitled to have the complaint dismissed, it will be dismissed. *Turner*, 541 F.3d at 1082.  However, if the complaint is not subject to dismissal, the court makes findings of fact necessary to resolve the exhaustion issue. *Id.*

### B. Failure to State a Claim

To state a claim for relief under 42 U.S.C. § 1983, a plaintiff must allege that an act or omission committed by a person acting under color of state law deprived him of a right, privilege, or immunity secured by the Constitution or laws of the United States. *Hale v. Tallapoosa County*, 50 F.3d 1579, 1582 (11th Cir.1995).  If a litigant cannot satisfy these requirements, or fails to provide factual allegations in support of the claims, then the complaint is subject to dismissal.  *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (noting that "[f]actual allegations must be enough to raise a right to relief above the speculative level," and complaint "must contain something more . . . than . . . a statement of facts that merely creates a suspicion [of] a legally cognizable right of action"); *Ashcroft v. Iqbal*, 556 U.S. 662, 681-85 (2009) (*Twombly* "expounded the pleading standard for all civil actions," and conclusory allegations that "amount to nothing more than a formulaic recitation of the elements of a constitutional . . . claim" are "not entitled to be assumed true," and, to escape dismissal, complaint must allege facts sufficient to move claims "from conceivable to plausible.").

## III. DISCUSSION

### A. Plaintiff failed to fully exhaust his administrative remedies

Defendants argue that Plaintiff has not exhausted claims 3 and 9-13. In support their argument Defendant's attach to their motion Exhibits A-H for support. (Docs. 97-1 - 97-8.)

After review of the attached exhibits, the Court concludes that Plaintiff has exhausted claims 2, 4-8, and 10 in grievance number 12-6-31031. (Doc. 97-2.) Plaintiff states in this grievance that he cut his wrist and was taken to SHOS, where Dr. Knollinger placed him in C.S.U. Hospital for additional treatment.  As a consequence of Plaintiff masturbating, Defendant Howell allegedly threatened to have an inmate assault Plaintiff. Defendant Knollinger released him to security. Defendant Harrell came to Plaintiff's cell, and thereupon Plaintiff started pulling out his stitches.  Defendant Gunn then bandaged Plaintiff's wrist and then Plaintiff was moved to Administrative Confinement.  While in administrative confinement in SHOS Plaintiff was pepper sprayed inside the cell for his previous behavior.  Defendant Harrell then took Plaintiff to the decontamination shower and told Plaintiff he would be gassed if he did not stop crying.  After decontamination, Plaintiff was placed back in his cell which was only partially decontaminated - the mattress was covered with chemical agents, and chemical agents still remained on the walls and toilet.  Plaintiff did not receive any bed linen until morning.  Afterwards, Plaintiff alleges he received two disciplinary reports that were fabricated.  Despite being a psych-3 inmate, Plaintiff was not referred to mental health after use-of-force for more than two weeks.  Plaintiff further claims that Warden

Barfield allowed the gassing to happen, despite Plaintiff not causing a disturbance. (Doc. 97-2 at 1.)

Plaintiff has not presented the remainder of his claims to the FDOC in accordance with their grievance procedures.  The unexhausted claims include the following:

## Claim 1

Plaintiff has not properly exhausted the claim that the Secretary of FDOC denied his "sensitive nature grievance," grievance 12-6-31031.  Plaintiff filed a grievance on December 13, 2012 claiming that the Administration improperly returned grievance 12-6-31031. The defect with this grievance is that Plaintiff filed this grievance directly as an administrative appeal, forgoing the informal and formal grievance filings. (Doc. 97-8 at 1.)  Plaintiff was required to pursue the informal and formal grievance procedures as required by the regulations of the FDOC. Plaintiff's failure to do so demonstrates that Plaintiff did not properly exhaust this claim.

Even assuming, however, that Plaintiff had properly exhausted this claim, the claim is still due to be dismissed because Plaintiff has failed to allege a constitutional claim.  The law is well settled that the denial of a grievance, without some other connection to the alleged constitutional violation, is insufficient to establish liability under § 1983.  *Gallagher v. Shelton*, 587 F.3d 1063 (10th Cir. 2009).  Because there are no allegations in the complaint suggesting that the Secretary had any causal connection to the underlying events Plaintiff alleges violated his constitutional rights, Plaintiff has failed to state a viable claim against the Secretary of the FDOC and

therefore the Secretary should be dismissed from this action.

## Claim 3

Plaintiff's claim that the FDOC's video-taping policy is unconstitutional is unexhausted.  Plaintiff has not included this claim in grievance 12-6-31031 or in any of the grievances filed afterwards.  Accordingly, because Plaintiff is required to exhaust completely any claims before bringing a § 1983 action, this claim is also due to be dismissed for failure to exhaust.

Even if the claim had been exhausted properly, the claim is still due to be dismissed because Plaintiff has failed to state a cognizable claim for relief.  Plaintiff fails to allege which provision of the Constitution the video-taping policy violates.  Assuming that Plaintiff is attempting to allege the policy violates the Eighth Amendment, the claim fails.

The policy states in relevant part:

> "A video recording is not required if, during the same shift, the inmate ceases the conduct creating the disturbance while the shift supervisor and camera operator are present with a camera but resumes such conduct after the shift supervisor and camera operator have departed the area prior to an application of chemical agents.  The shift supervisor has the authority at anytime to recommence video tape recording of subsequent incidents, but in all cases where the administration of chemical agents is subsequently required video recording will resume following the final exposure to chemical agents, include a statement referring to the originating incident, and continue from this point until the decontaminating shower is ordered, medical examination is offered, and the inmate is returned to secure, decontaminated housing."

Fla. Adm. Code Rule 33-602.210(9)(n)2.e.

The Eighth Amendment prohibits cruel and unusual punishment, which is characterized as the "unnecessary and wanton infliction of pain."   *Whitley v. Albers*,

475 U.S. 312, 320-21 (1986).  Although Plaintiff argues that the video-taping policy promotes corporal punishment because the policy does not require that the entire use-of-force incident be taped, the policy does not, on its face, violate any constitutional guarantees.  *United States v. Salerno*, 481 U.S. 739 (1987).  Any Eighth Amendment violation during a use-of-force incident would be caused by a prison official applying the policy unconstitutionally, not by the policy itself, and therefore the policy is not facially unconstitutional.  *Id.*  This claim therefore should be dismissed.

### Claim 9

Plaintiff also failed to raise in grievance 12-6-31031 (or any other grievance) his claim that pepper spraying inmates with high blood pressure constitutes cruel and unusual punishment in violation of the Eighth Amendment. As such the claim is due to be dismissed for failure to exhaust.  However, even if this claim had been exhausted properly, the claim is still subject to dismissal for failing to state a claim upon which relief may be granted, as more fully discussed *supra* pp. 22-24.

### Claim 11

Plaintiff also failed to exhaust properly his claim that Defendant Culpepper violated Plaintiff's Eighth Amendment and equal protection rights by placing Plaintiff in a cell with a full steel door because Plaintiff was accused of lewd and lascivious acts. This claim is not included in any of the grievances Plaintiff filed. Further, Plaintiff's statement in grievance 12-6-31031, that he was placed in "a cell by myself which was behind the steel door which they used for 1-6 infraction inmates" is insufficient to grieve this claim because Plaintiff never mentions (as he does in his complaint) that the cells were hotter

than the other cells or that Defendant only does so for inmates accused of committing a "lewd and lascivious" act.  Thus, in the absence of mentioning the factual basis of his claim in the grievance the claim is unexhausted and must be dismissed.

Even assuming, however, that the reference in grievance 12-6-31031 was considered sufficient to exhaust this claim, the claim is due to be dismissed because Plaintiff has failed to state a cause of action upon which relief may be granted

Merely placing an inmate in a cell with a steel door that is hotter than other cells does not constitute "cruel and unusual punishment."  Cruel and unusual punishment is characterized as the "unnecessary and wanton infliction of pain."  *Whitley*, 475 U.S. at 320-21.  The touchstone in determining when prison conditions rise to the level of cruel and unusual is the effect upon the imprisoned.  *Rhodes v. Chapman*, 452 U.S. 337 (1981).  When the cumulative impact of the conditions of incarceration threatens the physical, mental, and emotional health and well-being of the inmates and/or creates a probability of recidivism and future incarceration, the court must conclude that the conditions violate the Constitution.  *Laaman v. Helgemoe*, 437 F. Supp. 269, 322-23 (1977).

*Chandler v. Crosby*, 379 F.3d 1278 (11th Cir. 2004) is instructive. In *Chandler* several Florida inmates filed a complaint alleging that high temperatures in their cells during the summer months constituted "cruel and unusual punishment."  The Eleventh Circuit concluded that the prison temperatures, which ranged between 80 and 86 degrees farenheit on average and reached 95 degrees or hotter on seven occasions, were not unconstitutionally excessive because the higher temperatures standing alone

were insufficient to demonstrate an extreme deprivation of conditions of confinement to violate the Eighth Amendment. *Id.*  This case, like *Chandler*, alleges at most a condition that may create discomfort, but not a condition that threatens the physical well-being of an inmate.

Additionally, with respect to Plaintiff equal protection challenge Plaintiff fails to state a claim.  To state a claim for violation of equal protection, a plaintiff must show that (1) he is similarly situated with other prisoners who received more favorable treatment; and (2) his discriminatory treatment was based on some constitutionally protected interest, such as race.  *Jones v. Ray*, 279 F.3d 944 (11th Cir. 2001). Plaintiff claims that the reason inmates are placed in the cell with a steel door is for infraction of the rule prohibiting "lewd and lascivious" acts. Plaintiff does not make any claim that he was treated differently from other inmates by being placed in a cell with a steel door because of his  constitutionally protected interest such as race, national origin, religion, poverty, etc.   Accordingly, because the only difference in treatment alleged by Plaintiff is that inmates who commit lewd and lascivious act are treated differently, Plaintiff has failed to allege a violation of the equal protection clause and therefore this claim is due to be dismissed.

**Claim 12**

Plaintiff also failed to exhaust Claim 12, that Defendants Culpepper and Barfield failed to train the prison officials to use pepper spray properly.  While Plaintiff alleges in grievance 12-6-31031 that Defendant Barfield confirmed that Plaintiff was getting gassed and cites the Florida Administrative Code's ban on corporal punishment, this

allegation does not include the allegations in claim 12 that "the Administration at Apalachee Correctional Institution....allow their officers to misuse chemical agents as a corporal punishment instead of stopping a disturbance." (Doc. 28 at 10.)

Assuming, however, that this statement was sufficient to constitute exhaustion of this claim, the claim is due to be dismissed because Plaintiff has failed to allege a constitutional claim for failure to train.

To allege a constitutional claim for failure to train, the plaintiff must show that the actions of a supervising official have a causal connection to the alleged constitutional deprivation.  *Gonzalez v. Reno*, 325 F.3d 1228 (11th Cir. 2003).  A causal connection can be established when a history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged deprivation, and he fails to do so, or when a supervisor's custom or policy results in deliberate indifference to constitutional rights. *Rivas v. Freeman*, 940 F.2d 1491, 1495 (11th Cir. 1991).

Plaintiff's complaint is devoid of any allegations suggesting that there was a history of widespread abuse. Simply put, there is nothing in the complaint to suggest that there were other incidents that would put supervising officials Barfield and Culpepper on notice of the need to provide further training in the use of chemical agents. The only mention in the complaint is Plaintiff's conclusory assertion that "allowing administrative confinement official to abuse chemical agents...prison have a history of improper gas use.  " In the absence of any facts suggesting what is meant by "history of improper gas use" the allegations are insufficient to allege a claim for improper training.

## Claim 13

Finally, Plaintiff failed to exhaust claim 13, which concerns the FDOC's use of pepper spray on mentally disordered inmates. Plaintiff raises this claim as a violation of the ADA and not as an Eighth Amendment claim. There is no mention in any of Plaintiff's grievances about pepper spraying mentally disordered inmates of any mention that pepper spraying violates the ADA. Accordingly, this claim is unexhausted and is due to be dismissed.

Furthermore, the claim is not cognizable under § 1983.  A disability, as defined in the ADA, is a physical or mental impairment that substantially limits one or more major life activities of such individual.  42 U.S.C. § 12102(1)(A).  A "major life activity" includes caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working. 42 U.S.C. § 12102(2).  Preliminarily, Plaintiff has not shown that he has a disability that limits a major life activity, beyond stating that he is "mentally disordered."

Even if Plaintiff had shown he was disabled he, nonetheless, fails to allege a violation of the ADA.  Title II of the ADA applies to Public Services, and provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity."  42 U.S.C. § 12132.  There is no mention in the complaint that Plaintiff was denied services, programs or activities as a result of discriminatory treatment when he was placed

temporarily in the SHOS cell because he was accused of committing lewd and lascivious acts.  Further, Plaintiff does not allege he was pepper sprayed because he was mentally disordered but rather that he was pepper sprayed for his behavior (or lack thereof) in the SHOS cell.  Accordingly, Plaintiff has not and cannot state a claim for violation of the ADA.

### B. Only three of Plaintiff's exhausted claims state causes of action

Plaintiff has nine remaining claims that have been properly exhausted.  Of these claims, only three arguably state sufficient claims to survive Defendants' motions to dismiss.  The Court first will discuss the three claims that are not subject to dismissal and then address the remaining claims that should be dismissed.

### 1. Plaintiff has three claims that may proceed.

The crux of Plaintiff's Complaint is the pepper spraying incident.  Plaintiff claims that he was pepper sprayed while in his cell and while he was not causing a disturbance.  During the pepper spraying, Plaintiff alleges that Defendant Barfield walked by and observed the officers pepper spraying Plaintiff without justification and therefore failed to intervene by stopping the gassing.  Plaintiff then received a decontamination shower, but Defendant Harrell placed him back in the cell he was sprayed in.  Plaintiff alleges that the mattress, walls, and toilet were contaminated with chemical agents and that Defendant Rickman refused to provide Plaintiff with bed linen, forcing Plaintiff to lie on the contaminated mattress overnight.

First, with regard to Plaintiff's claim that Defendants violated the Eighth Amendment when they pepper sprayed him while he was not causing a disturbance,

these allegations if believed (which the Court must on a motion to dismiss) are sufficient to allege a violation of the Eighth Amendment.  Use of chemical agents without a penological justification can constitute a violation of the Eighth Amendment.  *Thomas v. Bryant*, 614 F.3d 1288 (11th Cir. 2010)(pepper spraying an inmate who had no capacity to comply was without penological justification and satisfied the Eighth Amendment's objective harm requirement); *Soto v. Dickey*, 744 F.2d 1260, 1270 (7th Cir. 1984)(using chemical agents solely for punishment or infliction of pain is an Eighth Amendment violation).  Taking the Plaintiff's allegations as true, he was moved from SHOS and placed in a cell in Administrative Confinement, where he was pepper sprayed while Plaintiff alleges he was not causing a disturbance.  Whether the pepper spray was administered because of Plaintiff's failure to comply with directives from correctional officers or was administered for no reason other than to punish him cannot be resolved on a motion to dismiss.  And while Plaintiff does not clearly identify which Defendant administered the pepper spray into his cell, the most plausible construction is that Plaintiff is referring to Defendant Harrell because Plaintiff specifically alleges later in the complaint that Defendant Harrell pepper sprayed him without justification. This claim is, therefore, sufficient to withstand the motion to dismiss.

Second, Plaintiff claims that Defendant Harrell placed him back in a cell that was partially contaminated, and that Defendant Rickman refused to give him bed linen, forcing him to lie on a contaminated mattress.  These allegations also are sufficient to state a claim for violation of the Eighth Amendment.

Even where chemical agents are used permissibly, the effects may be

exacerbated by prolonged exposure, inadequate decontamination, or poor ventilation, causing an unreasonable risk to an inmate's health that is serious enough to trigger inquiry under the Eighth Amendment. *Danley v. Allen*, 540 F.3d 1298, 1311 (11th Cir. 2008); *Thomas v. McNeil*, 2009 WL 64616, at *22 (M.D. Fla. January 9, 2009).   Plaintiff specifically alleges that as a result of spending the night in his partially contaminated cell, he experienced burning skin and difficulty breathing.  Plaintiff's allegations, therefore, are sufficient to allege a claim under the Eighth Amendment. Accordingly, this claim should be permitted to proceed.

Finally, Plaintiff has alleged a viable claim for failing to intervene against Defendant Barfield. Plaintiff alleges that Defendant Barfield observed officers pepper spraying Plaintiff. While the complaint is not a model of clarity, liberally construed Plaintiff alleges that Defendant Barfield saw Plaintiff pepper sprayed when Plaintiff was not causing a disturbance. This allegation is sufficient to allege that Barfield observed an inmate being pepper spraying without  a penological justification.  A claim for failure to protect requires that the prison official have subjective knowledge of the risk of serious harm and that the official failed to reasonably respond to the risk. *Farmer v. Brennan*, 511 U.S. 825, 837-38 (1994).  Assuming Plaintiff's version of events is true, the complaint fairly alleges that Defendant Barfield walked by Plaintiff while he was being pepper sprayed in his cell for no reason, which is sufficient to allege that Plaintiff was subject to a risk of serious harm, and that Barfield failed to reasonably respond to the situation.  This claim , therefore, is sufficient to survive Defendants' motions to dismiss.

> **2.**    **Plaintiff's remaining claims fail to state claims upon which relief may be granted.**

Plaintiff's remaining claims all fail to state a cause of action because Plaintiff has not alleged claims for violation of the Constitution or for violation of federal law.

Plaintiff first claims that he received two disciplinary reports from Defendant Rickman that contained falsified information. Even assuming as true that the disciplinary reports contained false information, Plaintiff cannot state a claim for retaliation, as he was found guilty of the behavior underlying the charge in a disciplinary proceeding. *O'Bryant v. Finch*, 637 F.2d 1207, 125 (11th Cir. 2011). The only potentially viable claims regarding the disciplinary report are claims asserting procedural violations, such as the denial of the due process protections afforded to prisoners in *Wolff v. McDonnell,* 418 U.S. 539 (1974). To that end, Plaintiff does not allege procedural defects in the disciplinary process and thus does not state a claim.

Additionally, Plaintiff claims that Defendants were deliberately indifferent to his medical needs. Plaintiff states that Defendants Knollinger and Howell conspired to move him from SHOS to Administrative Confinement in deliberate indifference to his need for medical treatment, and that Defendant Gunn improperly treated his wrist. An official acts with deliberate indifference when he knows that an inmate is in serious need of medical care, but refuses or fails to obtain medical treatment for the inmate. *Lancaster v. Monroe County*, 116 F.3d 1419, 1425 (11th Cir. 1997). Assuming that the removal of the stitches by Plaintiff from his wrist constituted a serious medical need, Defendants Knollinger and Howell immediately took Plaintiff to a nurse for medical treatment. (Doc. 28 at 6-7.) Thus, rather than alleging deliberate indifference Plaintiff

alleges that the correctional officers took prompt action.

To the extent Plaintiff claims that Nurse Gunn improperly treated his wrist, the allegations are insufficient to state a claim against her because a complaint that a physician or nurse is negligent in treating a medical condition is insufficient to rise to the level of an Eighth Amendment violation. *Estelle v. Gamble*, 429 U.S. 97 (1976). Plaintiff alleges that Nurse Gunn placed a bandage on Plaintiff's wrist and then sent him for further medical treatment. While Plaintiff does not mention what Nurse Gun should have not differently, if Plaintiff's claim is that she should not have bandaged his wrist but instead should have re-stitched his wrist, this is insufficient to demonstrate deliberate indifference, particularly where the Plaintiff removed the stitches in the first place. Accordingly, Plaintiff fails to state claims against Defendants for deliberate indifference to his medical needs and, therefore, these claims are due to be dismissed.

Plaintiff's next claim is that Defendants Knollinger and Howell conspired to send Plaintiff to Administrative Confinement so that he would be pepper sprayed. To establish conspiracy under 42 U.S.C. § 1983, a plaintiff must show (1) an underlying actual denial of his constitutional rights and (2) that the defendants reached an understanding to deny the plaintiff's rights. *Hadley v. Gutierrez*, 526 F.3d 1324 (11th Cir. 2008). Plaintiff's Complaint contains no facts alleging that Defendants Knollinger and Howell agreed to move him from SHOS to Administrative Confinement for the purpose of pepper spraying him. To the contrary, Plaintiff's version of events alleged in his complaint shows that Defendants moved Plaintiff because of behavioral problems. Accordingly, in the absence of any facts alleging an agreement to violate Plaintiff's

constitutional rights Plaintiff fails to state a claim for conspiracy upon which relief can be granted.

Turning to Plaintiff's claim that Defendants Harrell and Howell threatened him this claim is insufficient to rise to the level a constitutional claim.  The law is well settled that verbal abuse of a prisoner, without subsequent follow through on those threats, does not violate the Eighth Amendment.  *Hernandez v. Florida Dep't of Corrections*, 281 F. App'x 862, 866 (11th Cir. 2008).   While Plaintiff alleges that Defendant Howell threatened to have another inmate beat him up Plaintiff does not alleged that he was ever assaulted by another inmate. Further, while Plaintiff alleges thaat Defendant Harrell threatened to have Plaintiff gassed again if he did not stop crying Plaintiff does not allege that this threat was ever carried out.  Accordingly, Plaintiff's claims based upon the two verbal threats, without more, are insufficient to state claims for violation of the Eighth Amendment.

Plaintiff, next, alleges that Nurse Gunn failed to refer him to mental health within 24 hours of use-of-force, which is required for "psych 3" inmates.  The rule Plaintiff references, Fla. Admin. Code Rule 33-602.210 Use of Force (9)(p)(4), is a rule contained in the state administrative code.  Thus, even assuming the rule was violated, the claim does not allege a claim for relief under 42 U.S.C. § 1983 because a violation of state law is insufficient to form the basis of a § 1983 claim.  *Almand v. DeKalb County, Ga.*, 103 F.3d 1510 (11 th Cir. 1997).  Accordingly, because this claim does not allege a violation of federal law the claim is due to be dismissed.

Finally, Plaintiff claims that pepper spraying inmates with high blood pressure is

cruel and unusual punishment.  The use of pepper spray on disruptive inmates is not *per se* unconstitutional.  *Danley*, 540 F.3d at 1307.  Even where chemical agents are permissibly used, however, existing environmental or health conditions can exacerbate the expected short-term effects to create an unreasonable risk to an inmate's health or safety, triggering inquiry under the Eighth Amendment.  *Id.* at 1308, *McNeil*, 2009 WL 64616, at *22 (stating that chemical agents may pose an unreasonable risk to inmates with health issues such as diabetes, various circulatory and respiratory conditions). While the pepper spraying of an inmate with high blood pressure could possibly allege a constitutional violation, to state a viable claim a plaintiff would have to allege some identifiable harm or injury that results from administering pepper spray to an individual with high blood pressure, other than the normal reactions to pepper spraying. Plaintiff has failed to allege any harm, other than the normal and expected reactions by an individual who has been pepper sprayed.  Thus, while Plaintiff claims that he has high blood pressure, he does not alleged that his high blood pressure combined with the chemical agents created anything beyond the expected effect of pepper spraying. Plaintiff only alleges that he suffered burning skin and difficulty breathing, two reactions which are expected effects of pepper spray. *See, e.g.  Headwaters Forest Defense v. County of Humboldt*, 240 F.3d 1185, 1200 (9th Cir. 2001)(pepper spray can cause intense pain and a burning sensation that causes mucus to come out of the nose); *Kornagay v. Burt*, 2011 WL 839496 (N.D. Fla. February 8, 2011)(effects of exposure are pain and irritation of the mucous membranes, pulmonary irritation and prolonged coughing).  Plaintiff alleges that the only additional physical effects caused by his high

blood pressure were bad headaches for months after.  Even assuming that the bad headaches were caused by the combination of pepper spraying and high blood pressure, Plaintiff does not allege that the headaches created an unreasonable risk to his health or that he was required to receive additional medical treatment.

Accordingly, while it may be improper to pepper spray an inmate with a condition that prison officials know would be exacerbated by pepper spray, Plaintiff does not allege that high blood pressure may be exacerbated by pepper spraying nor does Plaintiff allege that he suffered any reactions from pepper spraying that were different or more serious from the normal reactions from pepper spraying of burning on the skin and pulmonary difficulty.  Accordingly, the Court concludes that this claim is due to be dismissed.

### C. Defendants are not entitled to qualified immunity.

Lastly, Defendants argue that they are entitled to qualified immunity.  "Qualified immunity protects government officials performing discretionary functions from suits in their individual capacities unless their conduct violates 'clearly established statutory or constitutional rights of which a reasonable person would have known." *Andujar v. Rodriguez*, 486 F.3d 1199, 1202 (11th Cir. 2007).  Further, qualified immunity is only available in suits for damages.  *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).

The qualified immunity test has two components: (1) the defendant violated a constitutional right, and (2) this right was clearly established at the time of the alleged violation.  *Holloman ex rel. Holloman v. Harland*, 370 F.3d 1252, 1264 (11th Cir. 2004). The claims which the Court concludes may proceed all present claims based upon

clearly established constitutional violations.

There is little question that pepper spraying an inmate without a penological justification is an Eighth Amendment violation.  *Thomas*, 614 F.3d at 1307.  Further, the Eleventh Circuit has concluded that leaving an inmate in a cell contaminated with pepper spray may form an Eighth Amendment claim.  *Danley*, 540 F.3d at 1311. Finally, failing to protect an inmate upon observing a risk of serious harm is an established constitutional violation.  *Farmer*, 511 U.S. at 834.  Accordingly, because the law in these three instances is clearly established Defendants are not entitle to qualified immunity.

### D. Plaintiff may be entitled to monetary relief.

As a final matter, Defendants contend that no relief is available to Plaintiff.  While Plaintiff is not entitled to injunctive relief he may be entitled to monetary relief.

With regard to injunctive relief, Plaintiff is not entitled to injunctive relief in this case because he is no longer housed at the institution where the incident occurred and where the defendants are located and, therefore, any declaratory or injunctive relief the Court could award would be moot.  *Wahl v. McIver*, 773 F.2d 1169, 1173 (11th Cir. 1985)("Absent class certification, an inmate's claim for injunctive and declaratory relief in a section 1983 action fails to present a case or controversy once the inmate has been transferred.").

Plaintiff, however, may be entitled to monetary relief against Defendants in their individual capacities.  While the PLRA bars compensatory damages when the only physical injury is *de minimus* and while the short-term physical effects of pepper spray

are generally considered *de minimus*, Plaintiff alleges more than simply short-term effects from pepper spraying. Plaintiff alleges that he was exposed to the chemical agents overnight, which arguably exacerbated the short term effects. Accordingly, at this stage of the case, on a motion to dismiss, the Court cannot conclude that Plaintiff's claims relate only to the *de minimis* short term effects of pepper spraying. Plaintiff's claim for monetary damages, therefore, should be permitted to proceed

## IV.  RECOMMENDATION

In light of the foregoing, it is respectfully recommended that:

(1)  Defendants' Motions to Dismiss, Doc. 94, should be **GRANTED** to the extent that all claims should be dismissed except for (i) Plaintiff's claim against Defendant Harrell for pepper spraying, (ii) Plaintiff's claim against Defendants Harrell and Rickman for leaving Plaintiff in a contaminated cell overnight, and (iii) Plaintiff's claim against Defendant Barfield for failing to intervene.  All other claims against Defendants Gunn, Howell and Crews should be dismissed.

(2)  Defendant Knollinger's Motion to Dismiss Plaintiff's First Amended Complaint, Doc. 99, should be **GRANTED** and Defendant Knollinger should be dismissed from this action.

(3)  This case should be referred to the undersigned for further proceedings.

**IN CHAMBERS** at Gainesville, Florida, this 15th day of December 2014.

*s/Gary R. Jones*

GARY R. JONES
United States Magistrate Judge

### NOTICE TO THE PARTIES

A party may file specific, written objections to the proposed findings and recommendations within 14 days after being served with a copy of this report and recommendation.  A party may respond to another party's objections within 14 days after being served with a copy thereof.  Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.